UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
WILLIAM WRIGHT,

        Plaintiff,

- against -

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,

        Defendants.
------------------------------------------------------------------X

**AMENDED COMPLAINT**

Jury Trial Demand

Plaintiff, WILLIAM WRIGHT, by and through his attorneys Leeds, Morelli & Brown P.C., alleges, upon knowledge as to himself and his own actions and upon information and belief as to all other matters, as follows:

### PRELIMINARY STATEMENT

1. Despite more than 14 years of hard work and dedicated service to the New York City Off-Track Betting Corporation (NYCOTB), Mr. Wright is the victim of blatant and condoned discrimination on the basis of his age, race and gender. Much of this discrimination commenced after Defendant, Linda Cauttero, became Plaintiff's immediate supervisor, and continued after Defendant, Graciella Prescis, was made his supervisor. After his complaints of discrimination, the NYCOTB has embarked on a mission to force Plaintiff to leave.

2. Mr. Wright holds a Master's Degree in Social Science with an emphasis on Economics and Labor, and a Bachelor's Degree in Business Administration.

3. Despite being highly educated and skilled, defendants have chosen to ignore Mr. Wright's qualifications and, instead, are bent on a course of discrimination and

1

retaliation for having complained of discrimination.

4. Defendants assign Mr. Wright to menial tasks including, but not limited to, copying, filing and shredding. His similarly situated co-workers are assigned much more meaningful tasks.

5. Mr. Wright has also been denied training due to his age, race, and gender.

6. Mr. Wright was and is still being denied opportunities for advancement due to his age, race, and gender and having complained about discrimination.

7. Plaintiff has applied for numerous positions, without ever receiving the appropriate consideration, with all the positions being filled by younger employees, many of whom are White females. These positions are as follows: Principle Administrative Associate, posted 07/16/97; Principal Administrative Associate, posted 02/28/00; Associate Director of Human Resources, posted 06/04/01; Confidential Branch Auditor, posted 10/15/02; Administrative Manager of Human Resources, posted 01/13/03; Administrative Manager of Human Resources, posted 06/21/04; Confidential Branch Auditor, posted 03/04/05; Assistant Buyer, posted 05/15/05; Office Associate, posted 06/22/05; Special Assistant, posted 10/07/05; Principal Administrative Associate of Human Resources, posted 10/11/05; and Principal Administrative Associate, posted 11/10/05.

8. Defendants have failed to give Mr. Wright sufficient consideration for these positions and engaged in discrimination and harassment in an attempt to force Plaintiff off of the job.

9. It is against this backdrop that liability should be found against the defendants and

Plaintiff should be awarded damages.

## JURISDICTION AND VENUE

10. This is a civil action based upon the Defendants' violation of the Age Discrimination in Employment Act of 1967, (ADEA), 29 U.S.C. § 621 et seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and any other cause of action which can be inferred from the facts set forth herein.

11. Venue is proper because the Defendant, NYCOTB, is located in New York County and much of the conduct complained of occurred in New York County.

12. The jurisdictional prerequisites to this lawsuit have been completed. Plaintiff has filed a formal administrative complaint with the New York State Division of Human Rights (SDHR) (SDHR Charge Number 10101862, Federal Charge No. 16GA400041) and has received a Determination and Order of Dismissal for Administrative Convenience as well as a Right to Sue letter dated August 17, 2005, which are attached as Exhibit A. This action is filed within 90 days of Plaintiff's receipt of his Right to Sue letter.

## PARTIES

13. Plaintiff, William Wright ("Plaintiff" or "Mr. Wright"), at all times hereinafter mentioned, was and still is a resident of Richmond County, New York. Plaintiff's date of birth is June 9, 1935. He is age 70, Black, and a male.

14. Defendant, New York City Off-Track Betting Corporation ("NYCOTB") is a public benefit corporation established under the laws of the State of New York with corporate headquarters located at 1501 Broadway, New York, NY 10036-5672.

# FACTUAL BACKGROUND

15. Plaintiff began working at NYCOTB in 1973 as a part time Betting Clerk.

16. Plaintiff continued in that position until 1977.

17. Plaintiff was re-hired in 1995 as a Telephone Agent, part time.

18. Plaintiff's work performance and attendance have always been satisfactory.

19. From 1997 to 2001, Plaintiff worked full time in Telephone Deposit Accounts (TDA), as an Office Associate.

20. In May 2001, Plaintiff applied for and was granted a lateral move to an Office Associate position in the Human Resources Department.

21. Much of the discrimination and harassment described herein began after Defendant Linda Cauttero became his supervisor in the Human Resources Department. It continued in 2002 after Plaintiff was moved from under Cauterro to the Records section under the direct supervision of Defendant Graciela Prescia.

22. Plaintiff has been passed over for promotion on numerous occasions.

23. In 2001, Plaintiff was denied the Associate Director of Training and Recruitment position in the Human Resources Department. The position was given to a White female security guard twenty years younger than Plaintiff.

24. In 2003, Plaintiff was denied the Administrative Manager of Pensions position in the Human Resources Department, which position was given to a female Office Associate who was approximately thirty-five at the time.

25. In 2004, Plaintiff was denied the Administrative Manager of Benefits position in the Human Resources Department, which position was given to a thirty year old female

secretary.

26. Instead of recognizing Plaintiff's abilities and strengths, Plaintiff has been relegated to menial clerical tasks including copying, filing, shredding, and pushing a mail cart. The shredding assignment was particularly humiliating insofar as Mr. Wright was required to shred documents day in and day out while on public display. The mail cart assignment was also extremely demeaning insofar as the person normally assigned to the task has a learning disability and no Whites were ever assigned to deliver mail.

27. Moreover, similarly situated younger White female counterparts have been assigned more meaningful tasks and provided with training opportunities not provided to Plaintiff. For example, Mr. Wright has been denied training on the NYCOTB's Genesys payroll computer system. Use of such system is required to execute essential functions of Plaintiff's Office Associate position.

28. In addition to Genesys training, Plaintiff has been denied training in the following areas: New Hires, Medical (LWOP), Medical Returns, Resignations, Out Processing, Discharges, Returns (SWOP), Pay Differentials, Promotions, Maturation (Salary Adjustments), Transfers, Reclassifications, Lay-Offs, Pay-Roll Notifications, and Direct Deposits.

29. As stated above, Plaintiff made a lateral move in May 2001 to an Office Associate position in Human resources under the supervision of Defendant Cauttero.

30. One responsibility delegated to Plaintiff under Cauttero's authority was to review records and accounting documents reported from the branch offices.

31. Each of the 73 branches produced approximately 30 accounting documents a month.

32. In June 2001, Cauttero forced Plaintiff to hand shred approximately 2200 documents.

33. Cauttero threatened Mr. Wright with a disciplinary write up if Plaintiff elected to use either of the two available automatic shredders.

34. Plaintiff had to remove hundreds of staples from the documents in order to shred them.

35. Soon after, Plaintiff began to experience intense pain and weakness in his right hand, wrist and thumb.

36. When Plaintiff informed Cauttero of the pain he was experiencing, her response was "You're lying. I don't believe you."

37. In July 2001, Cauttero entered Plaintiff's office, slammed down a large stack of documents, and said, "Start shredding."

38. Whenever Plaintiff was ordered to shred, he was forced to leave his office door completely open, so everyone in the office could observe Mr. Wright shredding. This was intended to humiliate and demean him.

39. Plaintiff's hand became even more painful; he considered filing a work-related Workers' Compensation claim but was fearful of retaliation from NYCOTB management.

40. Plaintiff pursued treatment from a private physician, Dr. Caligiuri of St. Vincent's Hospital & Medical Center NYC, New York.

41. Plaintiff received medication and a brace to wear, 24 hour a day, due to a tendon injury.

42. Defendant Cauttero would also take away the files that Plaintiff was working on, observe him excessively when he was sent on errands, forbid him to use his computer printer, limit his access to necessary computer discs, and restrict him from department celebrations. Plaintiff's similarly situated White female younger co-workers were not treated with the same disdain.

43. If Plaintiff elected to participate in an office celebration of any type, he would have to deduct time from his lunch break in order to do so. No one else in the office was required to deduct time from their personal time to attend office celebrations.

44. Defendant Cauttero also forced Plaintiff to rearrange the same 2000 (approximate) files, three separate times, making petty complaints each time that the files were either too tightly packed or too loose when filing was completed..

45. As a result of Cauttero's harassment, Plaintiff was compelled to seek psychiatric care in January of 2002.

46. Plaintiff was diagnosed with suffering from depression, insomnia, and intense anxiety (phobia) regarding working with Cauttero as his supervisor.

47. After the reporting of the foregoing, Mr. Wright was moved to the Records section of the Human Resources Department under the direct supervision of Defendant Prescia. Nonetheless, the discrimination, harassment, and retaliation continued.

48. For example, a younger White woman, Kathy Rehm, was promoted from a security position to Associate Director of Training and Recruiting.

49. Mr. Wright is also still continuously denied the opportunity to use the Genesys System. This places the younger women in a much more prominent position to be

7

promoted.

50. Defendants' conduct has also stifled Plaintiff's ability to contribute positively to the organization. By way of example, in April 2002, Plaintiff expressed to Defendant, McDonnell, the Executive Director of Human Resources, and Graciela Prescia, the Director of Wage and Salary Administration in the Human Resources Department, an interest in creating a job bank .

51. The job bank would have assisted the NYCOTB in finding applicants who had the specific, pertinent qualifications to fill available job openings.

52. Plaintiff's idea was not given sufficient consideration by the HR department.

53. In a memo dated June 21, 2002 to Grace Prescia, Plaintiff inquired as to when his training on the Genesys System would begin. Plaintiff had prior conversations pertaining to the necessary training. Despite repeated requests, Plaintiff has never been trained to use the Genesys System.

54. In December of 2002, as a show of interest and commitment to the Human Resources Department at NYCOTB, Plaintiff completed a two day seminar given by Skill Path Seminars entitled "Personnel/Human Resources Assistant."

55. On April 7, 2003, Plaintiff wrote a letter to McDonnell requesting more assignments and responsibility.

56. In a letter dated May 22, 2003 written to Plaintiff's Union President, Lenny Allen, Local 2021, Plaintiff expressed his frustration and confusion as to why the Human Resources Management was not better utilizing his education and training.

57. In September 2003, Plaintiff took the necessary steps to formally address, in writing,

8

his employment concerns. In retaliation, Plaintiff was called upon to prove that he possessed the Bachelors and Masters Degrees that he had earned through hard work. Having to produce documentation to the NYCOTB Inspector General to show that he was not lying about his education was humiliating.

58. On September 26, 2003, Plaintiff met with McDonnell. In that meeting, Plaintiff was told that the job opportunities at NYCOTB were extremely scarce and that the future held no promise. When Plaintiff asked why he was not given responsibilities equal to the other Office Associates, McDonnell belligerently stated, "I want the work assignments to remain as they are." McDonnell was dismissive and has never given Plaintiff the basic respect and consideration she grants to younger, White, female employees.

59. NYCOTB's actions have caused Plaintiff undue humiliation and embarrassment. After complaining about having to satisfy the Inspector General's inquires as to his educational experience, the NYCOTB retaliated. Plaintiff was the only person with an Office Associate title, out of thirty-six (36) such persons, to be ordered to push a mail cart from floor to floor. Such duties are normally reserved for a Mail Department delivery person who is mentally challenged.

60. During this time period, Plaintiff again inquired as to why he is not given the same job opportunities as other Office Associates. Other than retaliation, his complaints have gone unheeded.

61. In addition to the foregoing, examples of retaliation include being passed over for numerous positions. The following positions were given to younger, White females:

9

      A.    Associate Director of Human Resources, posted 06/04/01;
      B.    Confidential Branch Auditor, posted 10/15/02;
      C.    Confidential Branch Auditor, posted 03/04/05; and
      D.    Assistant Buyer, posted 05/15/05.

62. The following positions, although filled by minorities, were given to younger female employees:

      A.    Administrative Manager of Human Resources, posted 01/13/03;
      B.    Administrative Manager of Human Resources, posted 06/21/04; and
      C.    Office Associate, posted 06/22/05.

63. Plaintiff has also applied for the following positions, which positions, upon information and belief, were given or are going to be given to younger, White, and/or female persons:

      A.    Special Assistant, posted 10/07/05;
      B.    Principal Administrative Associate of Human Resources, posted 10/11/05; and
      C.    Principal Administrative Associate, posted 11/10/05.

64. All claims falling outside the statute of limitations are presented as background facts, and not intended to allege a cause of action.

## CAUSES OF ACTION AGAINST NYCOTB

(ADEA, 29 U.S.C. § 621 et seq.)
(Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.)

65. Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

66. The conduct alleged herein violates the ADEA, 29 U.S.C. § 621 et seq., as Defendants have, among other things, discriminated against Plaintiff in his

10

employment and denied him benefits on the basis of age. Defendants also retaliated against Plaintiff for having complained of age discrimination.

67. The aforementioned acts were also in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., as Defendants have, among other things, discriminated against Plaintiff in his employment and denied him benefits on the basis of race and gender. Defendants also retaliated against Plaintiff for having complained of race and gender discrimination.

68. As a result of Defendants' actions, William Wright suffered, and continues to suffer, injuries and damages.

## JURY DEMAND

69. Plaintiff demands a trial by a jury of all the issues so triable in this action.

**WHEREFORE**, Plaintiff demands judgment against Defendants for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, injunctive relief, promotion, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Carle Place, New York
      April 28, 2006

                              Respectfully submitted,

                              LEEDS MORELLI & BROWN, P.C.
                              *Attorneys for Plaintiff*
                              One Old Country Road, Suite 347
                              Carle Place, N.Y. 11514
                              (516) 873-9550

                    By:     _____
                              Nicole Marmanillo (NM-3808)