UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
WILLIAM WRIGHT,

                              Plaintiff,

- against -

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,

                              Defendant.

------------------------------------------------------------------------x

**DEFENDANT'S RULE 56.1 STATEMENT**

Docket No. 05 Civ. 9790 (WHP)

      Pursuant to Rule 56.1 of the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and this Court's motion rules, Defendant New York City Off-Track Betting Corporation, by its attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, submits this statement of material facts upon which there are no issues to be tried.

      1.      Plaintiff William Wright ("Wright" or "Plaintiff") commenced this action alleging that defendant New York City Off-Track Betting Corporation ("OTB" or "Defendant") violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). (Amended Complaint, ¶ 10; annexed to the Declaration of Daniel Chiu, dated July 2, 2007 ("Chiu Dec") as Exhibit D).

      2.      Plaintiff is a Black male and was born on June 9, 1935. (Chiu Dec., Ex. D, ¶ 13). Plaintiff is currently 72 years old. (Chiu Dec., Ex. D, ¶ 13). Plaintiff claims that he retired on August 1, 2006 because he was purportedly denied promotions due to unlawful reasons. (Chiu Dec., Ex. S). Plaintiff was 71 years old when he retired. (Chiu Dec., Ex. D, ¶ 13).

3. Plaintiff was employed by OTB as a part-time betting clerk from in or about 1973 through in or about 1977. (Chiu Dec., Ex. OO). Plaintiff was also employed by Pan Am from 1963 through 1991. (Chiu Dec., Ex. OO).

4. On May 1, 1995, Plaintiff was rehired by OTB as a part time betting clerk and worked in the Telephone Agents Department. (Chiu Dec., Ex. G; Wright dep. at 13).[1]

5. In January 1996, Plaintiff obtained the Office Associate title and moved to the Human Resources Department as a probationary Office Associate. (Wright dep. at 14-15 (Chiu Dec., Ex. A)). In December 1996, Plaintiff was informed by his supervisor, Gwen Nesbeth, that she was dissatisfied with Plaintiff's work and he was returned to the Telephone Agents Department. (Wright dep. at 17-8 (Chiu Dec., Ex. A)).

6. On April 18, 2001, Plaintiff was interviewed and selected by Linda Cauttero to work in Disciplinary Research effective May 14, 2001. (Chiu Dec., Ex. H). The Disciplinary Research department consisted of Plaintiff and Cauttero. (Cauttero dep. at 18 (Chiu Dec., Ex. C)).

7. While in the Disciplinary Research Department, Plaintiff was reprimanded for insubordinate behavior, including excessive breaks, using an unauthorized phone number for personal calls, failing to follow instructions and organize and label files, excessive personal use of electronic mail, and commenting on and discussing confidential disciplinary files. (Chiu Dec., Exs. I and J). Plaintiff's computer also contained inappropriate photographs. (Chiu Dec., Ex. O; Wright dep. at 95-7 (Chiu Dec., Ex. A)).

---

[1] Relevant transcript pages of the depositions of William Wright, Patricia McDonnell-Riggio, and Linda Cauttero are annexed to the Declaration of Daniel Chiu, dated July 2, 2007, as Exhibits "A," "B," and "C," and cited as "Wright dep.," "McDonnell-Riggio dep.," and "Cauttero dep.," respectively, followed by the page number.

2

8. Plaintiff was further reprimanded for using OTB's mail room for personal mail (Chiu Dec., Ex. K), incorrectly filing documents (Chiu Dec., Ex. L) and performing assignments (Chiu Dec., Ex. M), and stating to his supervisor, Ms. Cauttero, that she can "write your ass off." (Chiu Dec., Ex. N).

9. After Plaintiff was reprimanded by Ms. Cauttero, Plaintiff complained to Patricia McDonnell-Riggio, the Executive Director of Human Resources, that he was not happy reporting to Ms. Cauttero. (McDonnell-Riggio dep. at 12 (Chiu Dec., Ex. B); Cauttero dep. at 31-2 (Chiu Dec., Ex. C)). OTB then transferred Plaintiff out of Disciplinary Research and, effective May 6, 2002, into the Human Resources Department. (Chiu Dec., Ex. P; McDonnell-Riggio dep. at 21 (Chiu Dec., Ex. B)). Plaintiff's direct supervisor was Grace Prescia. (McDonnell-Riggio dep. at 41 (Chiu Dec., Ex. B)).

10. Linda Cauttero, Grace Prescia, and Patricia McDonnell-Riggio all expressed dissatisfaction with Plaintiff's work. (Wright dep. at 40-1 (Chiu Dec., Ex. A)).

11. On May 25, 2005, Plaintiff was reprimanded for misrepresenting to OTB job applicants that he was responsible for selecting applicants. (Chiu Dec., Ex. Q).

12. On January 20, 2006, Plaintiff was reprimanded for: (i) faxing documents to his supervisor, Grace Prescia, instead of the Unemployment Department as instructed by Ms. Prescia; and (ii) failing to file documents in a timely manner. (Chiu Dec., Ex. R; Wright dep. at 89 (Chiu Dec., Ex. A)).

13. Plaintiff alleges that Ms. Cauttero, Ms. Prescia, and Ms. McDonnell-Riggio discriminated against Plaintiff by not training him and because he was given tasks such as filing, shredding, and copying. (Wright dep. at 37-8, and 59 (Chiu Dec., Ex. A)). Plaintiff also claims that Ms. Cauttero discriminated against him because she placed garbage in his wastebasket. (Wright dep. at 34-5 (Chiu Dec., Ex. A)).

3

14. Two automatic shredders were available for Plaintiff's use. (Cauttero dep. at 24-5 (Chiu Dec., Ex. C)).

15. Plaintiff cannot identify any special training programs that he was denied. (Wright dep. at 51-3 (Chiu Dec., Ex. A)).

16. Patricia McDonnell-Riggio never made a derogatory comment about Plaintiff's race, age, or gender. (Wright dep. at 58-9 (Chiu Dec., Ex. A)). Plaintiff believes that Ms. McDonnell-Riggio does not dislike men in general, only that she dislikes Plaintiff. (Wright dep. at 59 (Chiu Dec., Ex. A)).

17. Grace Prescia never made a derogatory comment about Plaintiff's gender or race. (Wright dep. at 61 (Chiu Dec., Ex. A)).

18. The only derogatory age-related comment Plaintiff claims Grace Prescia made was when she asked Plaintiff "How old are you?" after a co-worker received overtime and Plaintiff asked why he could not receive overtime too. (Wright dep. at 60-2 (Chiu Dec., Ex. A)).

19. Plaintiff also claims that he was denied promotions because of his race, age, gender, and in retaliation for complaining about discrimination. (Chiu Dec., Ex. D, ¶ 6).

20. Plaintiff does not recall the positions he applied for and when. (Wright dep. at 65-6). Nor does Plaintiff recall the positions for which he received an interview nor who interviewed Plaintiff. (Wright dep. at 67-70 (Chiu Dec., Ex. A)).

21. Plaintiff claims that he created a list setting forth each position Plaintiff applied for and the date of the application. (Wright dep. at 66-67 (Chiu Dec., Ex. A)). Plaintiff, however, refused to produce the list. (Chiu Dec., Ex. T).

22. Plaintiff filed a verified complaint with the New York State Division of Human Rights on October 4, 2004 claiming that he was denied promotions because of his age, race/color, and sex. (Chiu Dec., Ex. E). The Verified Complaint was dual-filed with the US.

4

Equal Employment Opportunity Commission. (Chiu Dec., Ex. E). Plaintiff did not allege he was subjected to hostile-work environment harassment in the complaint he filed with the New York State Division of Human Rights. (Chiu Dec., Ex. E).

23.  The EEOC issued a right-to-sue letter on August 17, 2005. (Chiu Dec., Ex. F)

24.  The Amended Complaint does not assert any claims pursuant to the New York State or New York City Human Rights Laws. (Chiu Dec., Ex. D).

25.  Plaintiff filed an administrative charge of discrimination on October 4, 2004. (Chiu Dec., Ex. E). OTB's records show that Plaintiff did not apply for any positions with OTB between December 9, 2003 and October 4, 2004. (Declaration of Patricia McDonnell-Riggio, dated July 2, 2007 ("McDonnell-Riggio Dec."), ¶ 4). December 9, 2003 is 300 days prior to October 4, 2004. After Plaintiff filed his administrative charge on October 4, 2004, he applied for six positions with OTB. (Chiu Dec., Exs. V, Y, BB, EE, II, and LL).

26.  On March 15, 2005, Plaintiff applied to be a Confidential Branch Auditor in response to job posting #02-05. (Chiu Dec., Ex. U). Arthur Brandenburg selected the candidates to be interviewed. (Declaration of Arthur Brandenburg, dated July 2, 2007 ("Brandenburg Dec."), ¶ 5). Plaintiff was among those selected for an interview. (Brandenburg Dec. ¶ 5). Mr. Brandenburg is a Caucasian male and 62 years old. (Brandenburg Dec. ¶ 9). Mr. Brandenburg selected Melissa DiNapoli based on her qualifications and interview. (Brandenburg Dec. ¶ 5). Ms. DiNapoli is a 25 year old Caucasian female. (Chiu Dec., Ex. NN). Ms. DiNapoli exhibited a greater interest in the position, positive attitude, and willingness to learn that caused Mr. Brandenburg to believe that he would be able to train her in OTB Auditing Methodologies. (Brandenburg Dec. ¶ 7). Mr. Brandenburg did not base his decision on plaintiff's age, race, gender, or the filing of a discrimination complaint. (Brandenburg Dec. ¶ 8). Mr. Brandenburg

was unaware that Plaintiff had filed a discrimination complaint against OTB. (Brandenburg Dec. ¶ 8).

27.    On May 31, 2005, OTB posted Job Opportunity Notice #12-05 for an Assistant Buyer and Plaintiff submitted an application. (Chiu Dec., Exs. X and Y). The minimum educational requirement for the position was either a high school diploma or GED. (Chiu Dec., Ex. X). Two individuals were qualified for the position and Joyce Rodriguez, the Director of Purchasing, interviewed them both. (Declaration of Joyce Rodriguez, dated July 2, 2007 ("Rodriguez Dec."), ¶¶ 1 and 6). Plaintiff and Jennifer Rodriguez were interviewed. (Rodriguez Dec., ¶ 6). Jennifer Rodriguez is not related to the interviewer, Joyce Rodriguez. (Rodriguez Dec., ¶ 6). Jennifer Rodriguez was selected based on her prior experience working in Purchasing as an Office Associate, positive interview where she expressed interest and enthusiasm for the position, and willingness to work during holidays, weekends, or emergencies. (Rodriguez Dec., ¶ 6).

28.    During Plaintiff's interview, Joyce Rodriguez did not believe Plaintiff was interested in the position. (Rodriguez Dec., ¶ 7). Plaintiff did not ask any questions about the job or the duties of the job. (Rodriguez Dec., ¶ 7). Instead, his questions focused on the hours of the position and whether he would be required to work weekends or holidays. (Rodriguez Dec., ¶ 7). Joyce Rodriguez is a Black female and 57 years old. (Rodriguez Dec., ¶ 14). Jennifer Rodriguez is a Hispanic female and 28 years old. (Chiu Dec., Ex. NN). Joyce Rodriguez did not base her decision on plaintiff's age, race, gender, or the filing of a discrimination complaint. (Rodriguez Dec., ¶¶ 13 and 14). Joyce Rodriguez was unaware that Plaintiff had filed a discrimination complaint against OTB. (Rodriguez Dec., ¶ 13).

29.    On June 22, 2005, OTB posted Job Opportunity Notice #15-05 for an Office Associate and Plaintiff, although he was already an Office Associate, submitted an application.

6

(Chiu Dec., Exs. DD and EE). The minimum educational requirement for the position was either a high school diploma or GED. (Chiu Dec., Ex. DD). Joyce Rodriguez interviewed approximately six or seven qualified candidates, which included Plaintiff. (Rodriguez Dec., ¶ 9). All of the qualified candidates, with the exception of Plaintiff, were female and ranged in age from 22 to 31. (Rodriguez Dec., ¶ 9). Ms. Rodriguez selected Valerie Gendusa because of her scores on a Skill Evaluation test for Word and Excel. (Rodriguez Dec., ¶ 10). Ms. Gendusa had one of the highest scores, answering 67% of the advanced Word questions and 44% of the advanced Excel questions correctly. (Rodriguez Dec., ¶ 10). In contrast, Plaintiff scored 0% correct on the advanced Word and Excel questions. (Chiu Dec., Ex. GG).[2]

30.   Ms. Rodriguez also based her decision on Ms. Gendusa's interview. (Rodriguez Dec., ¶ 11). Again, Ms. Rodriguez did not believe Plaintiff was interested in the position due to his lack of questions about the position. (Rodriguez Dec., ¶ 11). Instead, Plaintiff's questions again focused on the hours of the job and whether he would be required to work weekends or holidays. (Rodriguez Dec., ¶ 11). Ms. Gendusa is a Caucasian female and 23 years old. (Chiu Dec., Ex. NN).[3]

31.   On September 27, 2005, OTB posted Job Opportunity Notice #30-05 for Administrative Manager – Branch Custodial Services and Plaintiff submitted an application. (Chiu Dec., Exs. AA and BB). The minimum educational requirement for the position was either a high school diploma or GED. (Chiu Dec., Ex. BB). Barry Novack, the Director of Branch Operations interviewed the qualified candidates, which included Plaintiff, and selected Brian Pitre. (Declaration of Barry Novack, dated July 2, 2007 ("Novack Dec."), ¶ 6). Mr.

---

[2] Exhibit GG is a 7 page document consisting of the computer test scores of Plaintiff, Valerie Gendusa, Christine Radice, Romy Zamora, Denver Smith, Madea Addy, and Lekeisha Johnson.
[3] Exhibit NN is a 7 page document consisting of the OTB Employee Profile information for Melissa DiNapoli, Blescent Fields, Valerie Gendusa, Debbie Jacques, Brian Pitre, Eugenei Raagas, and Jennifer Rodriguez.

Novack believed Mr. Pitre was the most qualified for the position because Mr. Novack placed a great importance on prior work experience in the Payroll Department. (Novack Dec., ¶ 6). The Administrative Manager was required to review and approve payroll documents and Mr. Pitre had worked in Payroll since 1999 as an Office Associate, then commencing in 2000, as Principal Administrative Associate. (Chiu Dec., Ex. CC; Novack Dec., ¶ 8). Plaintiff's application did not indicate any experience in the Payroll Department. (Chiu Dec., Ex. BB). Mr. Novack is a Caucasian Male and 37 years old. (Novack Dec., ¶ 14). Mr. Pitre is a Caucasian male and 32 years old. (Chiu Dec., Ex. NN). Mr. Novack did not base his decision on plaintiff's age, race, gender, or the filing of a discrimination complaint. (Novack Dec. ¶ 15). Mr. Novack was unaware that Plaintiff had filed a discrimination complaint against OTB. (Novack Dec. ¶ 14).

32. On November 4, 2005, OTB posted Job Opportunity Notice #33-05 for Principal Administrative Associate and Plaintiff submitted an application. (Chiu Dec., Exs. HH and II). The position was in the Payroll Department and required the candidate to ensure that the 1500 OTB employees were timely paid and that the proper deductions were made. (Declaration of Patricia Mickens, dated July 2, 2007 ("Mickens Dec."), ¶ 3). Patricia Mickens interviewed the qualified candidates and selected Blecent Fields. (Mickens Dec., ¶¶ 4-5). Ms. Mickens selected Ms. Fields because she was familiar with Ms. Fields' work. (Mickens Dec., ¶ 5). Ms. Fields had worked in the Payroll Department since 2000 and was familiar with the department's internal procedures. (Mickens Dec., ¶ 5). Based on Ms. Mickens observations of Ms. Fields' work, Ms. Mickens believed she would be able to work in a time pressured environment where payroll must be completed every six days. (Mickens Dec., ¶¶ 3 and 5). Ms. Mickens did not base her decision on plaintiff's age, race, gender, or the filing of a discrimination complaint. (Mickens Dec. ¶ 9). Ms. Mickens was unaware that Plaintiff had filed a discrimination complaint against OTB. (Mickens Dec. ¶ 9).

33. Ms. Mickens did not select Plaintiff because he did not appear for his scheduled interview. (Mickens Dec., ¶ 6). Ms. Mickens is a Black female and is 61 years old. (Mickens Dec., ¶ 9). Ms. Fields is a Black female and 49 years old. (Chiu Dec., Ex. NN).

34. On March 24, 2006, OTB posted Job Opportunity Notice #09-06 for Administrative Manager – BFO/Manpower Center. (Chiu Dec., Ex. KK). Plaintiff submitted an application and was interviewed by Mr. Novack for the position. (Chiu Dec., Ex. LL; Novack Dec., ¶ 14). The minimum educational requirement for the position was either a high school diploma or GED. (Chiu Dec., Ex. KK). Mr. Novack did not select Plaintiff because he believed Eugenei Raagas was a stronger candidate and had more relevant experience. (Novack Dec., ¶ 11). The position required the candidate to deal with human resource issues, such as employee transfers and leave procedures. (Novack Dec., ¶ 11). Ms. Raagas was a Principal Administrative Associate in the Human Resources Department and dealt with similar forms and leave procedures that she would encounter as the Administrative Manager in BFO/Manpower Center. (Novack Dec., ¶ 11). Ms. Raagas is an Asian female and 35 years old. (Chiu Dec., Ex. NN).

35. Plaintiff also claims that he was denied appointment to Administrative Manager of Human Resources. (Wright dep. at 112). There was no posting for Administrative Manager of Human Resources because it is a managerial position and it is OTB's option whether it posts for a managerial position. (McDonnell-Riggio Dec., ¶ 5). The position became vacant in April 2004 when Nitza Carrasco retired. (McDonnell-Riggio Aff., ¶ 4). Patricia McDonnell-Riggio, the Executive Director of Human Resources, filled the position on June 21, 2004 when she selected Debbie Jacques for appointment. (McDonnell-Riggio Aff., ¶ 6). Ms. Jacques previously served as Ms. McDonnell-Riggio's Special Assistant. (McDonnell-Riggio Aff., ¶ 6). Ms. McDonnell-Riggio believed that Ms. Jacques had demonstrated a strong work ethic, initiative, ability to get along with her co-workers, and ability to follow-up on projects.

9

(McDonnell-Riggio Aff., ¶ 6). Ms. Jacques also worked with Ms. Carrasco and was thus familiar with her job duties and responsibilities. (McDonnell-Riggio Aff., ¶ 8).

36. Ms. McDonnell-Riggio did not consider Plaintiff for the position because she did not believe he had the same initiative or motivation as Ms. Jacques. (McDonnell-Riggio Aff., ¶ 10). Plaintiff made careless errors, such as photocopying documents without unfolding the document and erroneously reporting to Ms. McDonnell-Riggio that over 100 personnel folders were missing. (McDonnell-Riggio Aff., ¶ 11).

37. Plaintiff alleges that he was denied various training opportunities because of his race, gender, and age. (Chiu Dec., Ex. D,.¶¶ 27-28). Plaintiff, however, is unable to identify any training opportunities for which a co-worker was sent and he was not. (Wright dep. at 51-4 (Chiu Dec., Ex. A)).

Dated: New York, New York
       July 2, 2007

                          MICHAEL A. CARDOZO
                          Corporation Counsel of the City of New York
                          Attorney for Defendant
                          100 Church Street, Room 2-170
                          New York, New York 10007
                          212-788-1158

                          By: _____
                               Daniel Chiu (DC-3381)
                               Assistant Corporation Counsel

To:   LEEDS MORELLI & BROWN, P.C.
       Attorneys for Plaintiff
       One Old Country Road, Suite 347
       Carle Place, New York 11514
       516-873-9550

## **CERTIFICATION OF SERVICE**

I, Daniel Chiu, hereby certify that:

On July 2, 2007, I served the annexed Defendant's Rule 56.1 Statement by depositing a true and correct copy, into the custody of United States Postal Service, in an enclosed package marked for overnight delivery, addressed to:

>Leeds Morelli & Brown, P.C.
>*Attorneys for Plaintiff*
>One Old Country Road, Suite 347
>Carle Place, New York 11514

I certify under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
July 2, 2007

_____
Daniel Chiu